IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JOHN JAMES, PRO SE, | § | |
| TDCJ-CID No. 1700754, | § | |
| Previous TDCJ-CID No. 1177921, | § | |
| Previous TDCJ-CID No. 1421694, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:14-CV-0225 |
| | § | |
| Senior Warden NORRIS JACKSON, | § | |
| | § | |
| Defendant. | § | |

## ORDER ADOPTING AND SUPPLEMENTING
## REPORT AND RECOMMENDATION
## and ORDER OF DISMISSAL

Plaintiff JOHN JAMES, acting *pro se* and while a prisoner incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division, has filed suit pursuant to Title 42, United States Code, section 1983 complaining against the above-referenced defendant and has been granted leave to proceed pursuant to Title 28, United States Code, section 1915.

On February 11, 2015, a Report and Recommendation was issued by the United States Magistrate Judge recommending dismissal of the instant cause with prejudice as frivolous and for failure to state a claim on which relief can be granted.

Plaintiff filed his Objections on February 27, 2015.

By his Objections, plaintiff argues he was subjected to visual body cavity strip searches "over one hundred [times] . . . in less than 25 days." That would appear to average out to about four or five times a day.

Plaintiff contends there was no need to conduct strip searches of himself and the approximately one hundred other G-4 medium custody inmates; nevertheless, by his own Step 1 grievance attached to his January 23, 2015 Questionnaire response, plaintiff states the strip-search requirement[1] was triggered when some G-4 inmates were discovered in possession of contraband in the form of home-made drinking alcohol or "hooch."

The Fifth Circuit recognizes that, while a prisoner possesses a "constitutional right to bodily privacy," that right "is minimal, at best." *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002). Inmates lose "those rights that are necessarily sacrificed to legitimate penological needs." *Elliott v. Lynn*, 38 F.3d 188, 190-91 (5th Cir. 1994).

Plaintiff asserts he and the other G-4 inmates were "strip searched before and after breakfast outside the cell in public [sic] of other offenders, male and female officers that were not involved in the strip searches." The Fifth Circuit has ruled that strip searches carried out in non-secluded areas of the prison and in the presence of prison employees of the opposite sex are not unconstitutional and do not constitute an infringement upon an inmate's Fourth Amendment rights to be free from an unreasonable search. *Elliott v. Lynn*, 38 F.3d 188, 190-92 (5th Cir. 1994).

The Fourth Amendment requires that "searches or seizures conducted on prisoners must be reasonable under all the facts and circumstances in which they are performed. *Elliott*, 38 F.2d at 190-92. Nevertheless, "because a prison administrator's decisions and actions in the prison

---

[1] Plaintiff stated all G-4 inmates, including plaintiff, were required to go through a strip-search before going to the dayroom, showers, church, or any other activity.

2

context are entitled to great deference from the courts, the burden of proving reasonableness is a light burden." *Id.*

A strip search, including the exposure of body cavities for visual inspection, does not have to be based upon probable cause. *Bell v. Wolfish*, 441 U.S. 520, 558, 99 S.Ct. 1861, 1885, 60 L.Ed.2d 447 (1979); *accord United States v. York*, 578 F.2d 10-36, 1041 (5th Cir.), *cert. denied*, 439 U.S. 1005, 99 S.Ct. 619, 58 L.Ed.2d 682 (1978). The discovery and confiscation of alcohol, drugs, or other contraband in the prison setting is a legitimate penological interest and is a reasonable justification for the searches plaintiff challenges.

Plaintiff argues the drinking alcohol would be concealed in a trash bag or in a shampoo bottle and neither would fit in an anal cavity so strip searching was pointless. Accepting, for purposes of this analysis, the accuracy of plaintiff's contention, the initial discovery of drinking alcohol does not limit all future searches for contraband to drinking alcohol or prevent it from including a search for drugs or other contraband as well.

Plaintiff further argues strip searches that violate the Eighth Amendment also violate the Fourth and Fourteenth Amendment and that the challenged searches were excessive and unreasonable under the Fourth Amendment. The analysis set forth above, evaluates the challenged searches under the Fourth Amendment.

Any challenge under the Eighth Amendment is meritless because the Fifth Circuit has refused to extend the Eighth Amendment to strip searches. *Oliver v. Scott*, 276 F.3d 736, 743 n. 9 (5th Cir. 2002)(citing *Moore v. Carwell*, 168 F.3d 234, 237 (5th Cir. 12999). Plaintiff says no contraband was ever found during the strip searches and they violated the Due Process clause of the Fourteenth Amendment. In the wake of *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132

L.Ed.2d 418 (1995), an inmate's liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" and these will normally consist of deprivations which clearly impinge on the duration of confinement. *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995)(quoting *Sandin v. Conner*, 515 U.S. 472, 474, 115 S.Ct. 2293, 2295, 132 L.Ed.2d 418 (1995)).  Being subjected to strip searches does not clearly impinge on the duration of confinement and is not an atypical and significant hardship in relation to the ordinary incidents of prison life.  The Fourteenth Amendment's Due Process clause does not provide a basis for plaintiff's strip search challenge.

Plaintiff contends the searches of inmates outside their cells were in violation of the Prison Rape Elimination Act (PREA)."  The PREA authorizes grant money and creates a commission to study the issue of rape in prison.  42 U.S.C. §15601 et seq.  "[T]he statute does not grant prisoners any specific rights."  *Todd v. Smith*, 2013 WL 3716606 (W.D. La. 2013) (quoting *Chinnici v. Edwards*, 2008 WL 3851294 (Dist.Vt.2008): *Green v. Brown*, 2011 WL 3799047 (Dist.Co.2011)).

Plaintiff contends it is unconstitutional to strip inmates in a group and that the strip searches were not applied in a good faith effort to maintain or restore discipline but were used to maliciously and sadistically degrade, harass and cause mental anguish."  Plaintiff has presented no allegation of facts to support his accusation of malicious and sadistic intent.  Civil rights claimants must state specific facts, not conclusory allegations.  *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986); *see also Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996)(Section

4

1983 actions against individual governmental officials require "claims of specific conduct and action giving rise to a constitutional violation, not merely conclusory assertions.").

Citing *Shain v. Ellison*, 273 F.3d 56, 66 (2d Cir. 2001), plaintiff argues strip searches are unconstitutional unless the guard has a "reasonable suspicion" the detainee has a concealed weapon or contraband. *Shain*, of course, is not binding precedent in the Fifth Circuit. Moreover, that case concerned the strip and visual cavity search of a pre-trial detainee who was charged only with a misdemeanor and remanded to a local correctional facility, not an identical search of a convicted felon housed in a state correctional facility. Further, the *Shain* court's discussion of Second Circuit caselaw such as *Covino v. Patrissi*, 967 F.2d 73 (2d Cir. 1992) made clear that even a pre-trial detainee, if he were housed at a state correctional facility where he was commingled with sentenced inmates, could be subjected to random strip searches despite his pre-trial status, because it was "reasonably related to legitimate penological interests." *Id.*

Plaintiff also objects that defendant Warden JACKSON has allowed an Officer Tyler to "continue to strip [plaintiff] and harass in retaliation for writing grievances on [Tyler]." Plaintiff says he has filed several grievances but Tyler continues to harass him. Plaintiff states the Warden has called plaintiff to his office about the strip searches and told plaintiff that Tyler is doing a good job. Citing *U.S. v. Dortch*, 203 F.3ed 883 (5th Cir. 2000), plaintiff concludes that "[s]upervisors are liable if they know about the conduct and facilitate it, approve it, condone it or turn a blind eye for [sic] of what they might see."

Plaintiff seeks to sue defendant Warden JACKSON because plaintiff's complaints about Officer Tyler were not satisfactorily resolved. The grievances plaintiff has attached show his and other complaints about Officer Tyler were investigated both at Step 1 and at Step 2 and no

evidence was found to support his allegations. Plaintiff may even have complained personally to defendant JACKSON, in addition to filing his grievances. Nevertheless, plaintiff has alleged no fact showing defendant JACKSON had personal knowledge of any wrongdoing by Officer Tyler and facilitated, approved, condoned, or turned a blind eye to it. Instead, the facts presented by plaintiff show his complaints were investigated and nothing was found to substantiate them. Plaintiff has failed to allege facts to support a claim against defendant JACKSON based on the alleged acts by defendant Officer Tyler.

In addition, and in the alternative, review of plaintiff's October 29, 2014 original complaint, shows plaintiff alleges the challenged searches began October 18, 2014. Plaintiff attached to his January 23, 2015 Questionnaire response, copies of the grievances he filed concerning the challenged searches, even though the Questionnaire did not request copies of such grievances. Responses to a questionnaire and testimony accepted during *Spears* hearings become part of the pleadings and are considered in evaluating the plaintiff's complaint. *Eason v. Holt*, 73 F.3d 600 (5th Cir. 1996); *Talib v. Gilley*, 138 F.3d 211 (5th Cir. 1998).

Review of the unsolicited grievances attached to plaintiff's Questionnaire response reveals plaintiff filed his Step 1 grievance on November 9, 2014 and the response by prison officials was made on November 25, 2014. Plaintiff filed his Step 2 grievance on December 1, 2014. The response from prison officials is dated December 16, 2014.

It is clear plaintiff did not exhaust administrative remedies before filing his original complaint on October 29, 2014 or his Amended Complaint on December 12, 2014.

Although the district court may not screen a prisoner's complaint for failure to plead exhaustion, "[a] complaint is subject to dismissal for failure to state a claim if the allegations,

6

taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).  One way in which a complaint may show the inmate is not entitled to relief is if it alleges facts that clearly foreclose exhaustion. In such a case, the district court may sua sponte dismiss the complaint for failure to state a claim. *See Carbe v. Lappin,* 492 F.3d 325, 328 (holding that "[u]nder *Jones, ...* a court can dismiss a case prior to service on defendants for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust"); *United States v. Del Toro-Alejandre,* 489 F.3d 721, 723 (5th Cir.2007) (holding that *Jones* "recognized that the usual PLRA practice would permit a district court to dismiss sua sponte an inmate's complaint for failure to exhaust in the rare instance where the prisoner's failure to exhaust appeared on the face of his complaint").

Plaintiff did not exhaust administrative remedies prior to filing suit in federal court as required by Title 42, United States Code, section 1997e(a).  Plaintiff's allegations, taken as true, show the plaintiff is not entitled to relief.

The Court has made an independent examination of the records in this case and has examined the Magistrate Judge's Report and Recommendation, as well as the objections filed by the plaintiff.

The Court is of the opinion that plaintiff's objections should be OVERRULED and the Report and Recommendation of the United States Magistrate Judge should be ADOPTED by the United States District Court, as supplemented herein.

This Court, therefore, does OVERRULE plaintiff's objections, and does hereby ADOPT the Report and Recommendation of the United States Magistrate Judge, as supplemented herein.

IT IS THEREFORE ORDERED that the Civil Rights Complaint by JOHN JAMES is DISMISSED WITH PREJUDICE AS FRIVOLOUS AND FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.  In the alternative, as supplemented herein, the Civil Rights Complaint by JOHN JAMES is DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED IN THAT PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES PRIOR TO FILING SUIT IN FEDERAL COURT AS REQUIRED BY TITLE 42, UNITED STATES CODE, SECTION 1997e(a)

LET JUDGMENT BE ENTERED ACCORDINGLY.

All pending motions are DENIED.

The Clerk shall send a copy of this order to plaintiff and to any attorney of record.  The Clerk shall also mail copies of this order to the Pro Se Clerk at the U.S. District Court for the Eastern District of Texas, Tyler Division.

It is SO ORDERED.

Signed this the _____ day of March, 2015.

MARY LOU ROBINSON
United States District Judge

8